IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JEROME E. HEINEMANN,
NELSON "SKIP" FOLEY, JR.,
JEANNE DOOGS,
JOHN DOW, 1 THRU 5, AND
JANE DOE, 1 THRU 5,

      Plaintiffs,

v. // CIVIL ACTION NO. 2:07CV91
      (Judge Keeley)

BEVERLY KENNEDY, D. ANDREW BYRNE,
JACKSON W. MAYNARD, JR., MATTHEW
D. SAWYER, JANELLE SKINNER-WEILL,
WINAN' WICHAPI TO, INC., THEODORE
C. WEILL, ERIC N. WEILL, TERRY P.
WEILL, UNIVERSAL WEARPARTS, INC.,
DAVIE C. RICHARDSON, R. I.
REFRIGERATION SUPPLY CO., INC.,
DONALD HOPPES, JEANETTE HOPPES,
JERRY STEWART, CHARLES FOSTER,
REBECCA FOSTER and RUBEN J. HERNANDEZ, JR.,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

Before this Court is the defendants' motion to dismiss this case. For the reasons that follow, the Court **GRANTS** the motion and **DISMISSES** this case **WITHOUT PREJUDICE**.

### I. Background

On November 6, 2007, the <u>pro se</u> plaintiffs filed a Complaint pursuant to the civil remedies of the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "civil RICO"), 18 U.S.C. § 1964, and the Hobbs Act, 18 U.S.C. § 1951.

## ORDER GRANTING MOTION TO DISMISS

The plaintiffs purport to be duly-elected national officers of an unincorporated national political association, the Reform Party. Plaintiff Jerome E. Heinemann ("Heinemann") is a citizen of West Virginia. Plaintiff Nelson "Skip" Foley, Jr. ("Foley") is a citizen of Maine. Plaintiff Jeanne Doogs ("Doogs") is a citizen of Texas. The plaintiffs also allege John Doe 1-5 and Jane Doe 1-5 as additional plaintiffs.

Defendant Beverly Kennedy ("Kennedy") is a citizen of Texas. Defendant D. Andrew Byrne ("Byrne") is a citizen of New York. Defendant Jackson W. Maynard, Jr. ("Maynard") is a citizen of Florida. Defendant Matthew D. Sawyer ("Sawyer") is a citizen of Texas. Defendant Janelle Skinner-Weill ("Skinner-Weill") is a citizen of Nebraska. Defendant Winan' Wichapi To, Inc. ("Winan' Wichapi To") is a corporate defendant that is a citizen of Nebraska. Defendants Theodore C., Eric N., and Terry P. Weill (the "Weills") are all citizens of Mississippi. Defendant Universal Wearparts, Inc. ("Universal Wearparts") is a corporate defendant that is a citizen of Mississippi. Defendant David C. Richardson ("Richardson") is a citizen of Rhode Island. Defendant R.I. Refrigeration Supply Co., Inc. ("R.I. Refrigeration") is corporate defendant that is a citizen of Rhode Island. Defendants Donald and Jeanette Hoppes (the "Hoppes") are citizens of Nebraska. Defendant

**HEINEMANN V. KENNEDY**                                                           **2:07cv91**

**ORDER GRANTING MOTION TO DISMISS**

Jerry Stewart ("Stewart") is a citizen of Nebraska. Defendants Charles and Rebecca Foster (the "Fosters") are citizens of Texas. Defendant Ruben J. Hernandez, Jr. ("Hernandez") is a citizen of Florida. Thus, no defendant is a citizen of West Virginia.

The plaintiffs allege that the defendants have sought to disrupt and prevent them from carrying out their lawful duties as officers of the Reform Party. Specifically, they contend that each of the defendants has engaged in a pattern of activities designed to disrupt and deny the plaintiffs their civil liberties and elected duties by continued "wrongful use of action," harassment and intimidation via wrongful use of action, malicious prosecution, vexatious litigation, and fear, including extortion. By way of example, at Paragraph 27 of the Complaint, the plaintiffs allege:

> Defendants . . . have profited in varying degrees to untold and unreported hundreds-of-thousands of dollars fraudulently obtained in the name of "associations" that if registered were legally bound to report such income and expenditures; however no such legal registration or reporting has ever been filed with the requisite Federal or State Agencies. . .

And at Paragraph 28 of the Complaint, they allege:

> And in the case of Defendant Beverly Kennedy, the multiple filings of false financial reports with the Federal Election Commission. All of the named Defendants' actions in this complaint have resulted in damages and harm to the Plaintiffs as well as violations

to the Plaintiffs' civil liberties, specifically, constitutional rights of association and speech.

Paragraph 29 of the Complaint is the first paragraph in a section of the Complaint entitled "Predicate Acts of Defendants." In this Paragraph, the plaintiffs allege:

> Dating back to 23 July 1999, Defendant Beverly Kennedy can be traced to a pattern of activities whereby she became a "kingpin" in an organized effort to disrupt an unincorporated political association, including profiting through personal enurement [sic] from the misappropriation of Federal Matching Funds through her position on a subcommittee that resulted in a judgment against the unincorporated political association in excess of $333,558.00, plus interest, upheld by the 11th Circuit Court of Appeals on 1 March 2007. She was joined in this effort by Defendant Matthew D. Sawyer and others.

In Paragraph 30 of the Complaint, they further allege:

> On or about 28 December 1999, a press release announced Defendant Beverly Kennedy as "secretary" of an organized effort that on 17 February 2000 became a North Carolina for-profit business corporation that actively engaged in the disruption of an unincorporated political association, disruption of its 2000 nominating convention, and disruption of the 2000 campaign of a presidential candidate duly nominated. No political action committee was first formed and no financial records were reported as required by State law.

In Paragraphs 31 through 36 of the Complaint, the plaintiffs complain about a "pattern of vexatious lawsuits." In Paragraph 32 of the Complaint, they accuse the defendants of filing a lawsuit in

ORDER GRANTING MOTION TO DISMISS

Michigan in 2004 that prevented six individuals from running for office.

In Paragraph 37 of the Complaint, the plaintiffs allege that some of the defendants

> continue to wrongfully hold themselves out to be national officers, solicit funds from the public, and misuse the name, logo and website of an unincorporated association.
> . . .

In Paragraph 38 of the Complaint, they allege that the defendants

> have mislead [sic] the public claiming to be national officers when they have been declared by a Jury Verdict to be invalid, and by promoting candidates for public offices on the Internet that were fallacious and non-existent, raised funds in the name of the association without compliance to Federal and State reporting statutes, failed to report all financial transactions, and willfully interfered with Plaintiffs' elected duties and ability to comply with Court mandated requirements.

Finally, in Paragraph 42 of the Complaint, the plaintiffs identify the following RICO "predicate acts":

> Plaintiffs allege that "predicate acts" under both RICO and the Hobbs Act do establish a pattern of activity in violation of federal law carried out by the illicit enterprise jointly established by the Defendants, via their unlawful use of the names of unincorporated associations. Defendant Beverly Kennedy initiated this most recent pattern of activities on 10 March 2005 when she filed the first of numerous false documents with the Federal Election Commission.

## II. Motion to Dismiss

The defendants assert that this Court lacks both subject matter and personal jurisdiction. They also allege that venue is not proper in the Northern District of West Virginia, that service has not been effected properly upon the Defendants, and that the Complaint fails to state a claim upon which relief may be granted.

The plaintiffs' response to the motion is difficult to analyze. They appear to continue to allege that the defendants engaged in "racketeering activities" beginning in 1999 by holding themselves out to be national officers of the Reform Party. They also allege that a federal court has previously invalidated any such claim.[1] They also assert that this Court has both federal question and diversity jurisdiction over their lawsuit.

According to the plaintiffs, the defendants have operated criminal enterprises that have continuity of structure and personnel, a common or shared purpose, and an ascertainable structure distinct from that inherent in the pattern of

---

[1] In Reform Party of the United States v. O'Hara, 4:05cv426, the United States District Court for the Northern District of Florida found that the 2005 convention, in which some Defendants were elected as national officers of the Reform Party, was invalid and dismissed the lawsuit because the plaintiffs in that case lacked authority to pursue the lawsuit on behalf of the Reform Party.

racketeering. Plaintiffs' Response 2. They allege that the defendants "stole" a Reform Party website on August 5, 2005 and persist in presenting false information to the public through that website. Id.

The plaintiffs further contend that the defendants' "pattern of racketeering" has included

> the filing of numerous wrongful use actions, vexatious lawsuits, threats of economic harm, unauthorized use of property, false advertising themselves, operating bogus bank accounts in the name of the Reform Party, soliciting funds from the public on the Internet for candidates for federal office that do not exist, failing to report funds raised and expenditures, filing false documents in the name of the Reform Party with federal agencies, courts and banks, and failing to report as required by law the hundreds-of-thousands of dollars spread among themselves.

Plaintiffs' Response 2.

They contest all six grounds listed in the defendants' motion to dismiss and have filed voluminous exhibits in support of their response.

In considering a motion to dismiss, this Court must accept as true all of the factual allegations contained in the complaint and construe all facts in the light most favorable to the plaintiffs. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965(2007).

A.  Subject Matter Jurisdiction

According to the defendants, this case boils down to alleged violations of federal campaign finance laws.[2] And in point of fact, many of the predicate acts on which the plaintiffs base their RICO and Hobbs Act claims, such as allegedly filing false reports with the Federal Election Commission, would be violations of campaign finance laws.

The plaintiffs, however, also allege that the defendants have engaged in a pattern of "vexatious lawsuits" filed throughout the country that are designed to harass the plaintiffs. Furthermore, they allege that the defendants have illegally commandeered the official website of the Reform Party.

1.  *Standing*

Although not questioned by either party, this Court must first determine whether the plaintiffs have standing to bring their lawsuit. Article III of the United States Constitution limits the

---

[2]The Defendants urge this Court to dismiss all claims on the basis that this Court lacks subject matter jurisdiction over violations of federal campaign finance laws. Because the Court is dismissing those claims for lack of standing, the Court declines address this alternative ground. To the extent that the Defendants allege that the remaining counts should be dismissed based on this argument, the Court rejects that assertion and finds that the allegations asserted by the Plaintiffs, such as vexatious lawsuits and harassment, fall outside of the realm of campaign finance law.

judicial power of federal courts to "cases and controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Hein v. Freedom From Religion Foundation, Inc., 127 S.Ct. 2553, 2562 (2007).

In order for a case or controversy to exist, the parties must have standing. Id. "The requisite elements of Article III standing are well established: A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Id. A plaintiff must show "a personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204 (1962). "[M]ere interest in a problem, no matter how longstanding the interest . . . is not sufficient by itself" to create standing. Sierra Club v. Morton, 405 U.S. 737, 739 (1972).

A pro se litigant may only represent his or her own personal interests, not the interests of any other person or organization. Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975). For this Court to find otherwise would be clear error. Id.

**ORDER GRANTING MOTION TO DISMISS**

In the instant case, the plaintiffs allege many injuries both to the Reform Party as a national organization and also to various Reform Party state organizations. For example, they allege that the defendants unlawfully hijacked the national Reform Party convention, illegally spent its money, violated various campaign finance laws while acting under the guise of representing the organization, illegally commandeered its Internet web site, and engaged in a pattern vexatious litigation against both the national organization and various state entities. Even if true, all of these injuries are injuries to one or more organizations, not to any of the three natural persons appearing before the Court as pro se litigants.

By statute, the property of a political party belongs to the party as an organization, not to its individual members. 2 U.S.C. § 349a(b). In fact, it is illegal for officers or members of a political party to use party funds or property for their own personal benefit. Id. The plaintiffs have not alleged, nor could they, that they personally owned the Reform Party's national convention, finances or Internet web site.

Although the argument is not well developed, the plaintiffs apparently contend that they have a personal interest in the alleged injuries to the Reform Party due to their strong personal

beliefs in the ideals for which the party stands. They also appear to be arguing that their status as taxpayers and citizens gives them an interest in the proper administration of the political process. Both of these arguments fail to establish the personal interest necessary for standing inasmuch as "a mere interest in a problem" is insufficient to create standing. Sierra Club, 405 U.S. at 739. While the commitment of the plaintiffs "may enhance [their] legislative access, it does not, by itself, provide entry to a federal court." Int'l Primate Protection League v. Institute for Behavioral Research, Inc., 799 F.2d 934, 938 (4th Cir. 1986).

As with the plaintiffs in Sierra Club, 405 U.S. at 735, and Int'l Primate Protection League, 799 F.2d at 938, who failed to establish a personal interest based upon a love of nature or a love of animals, the plaintiffs here have failed to assert an interest personal to themselves that would render them any more injured than millions of other people nationwide who support the ideals of the Reform Party.

The plaintiffs' status as citizens and taxpayers also does not provide them with standing to raise generalized grievances about the misuse of the political process. See Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 223 (1974) (to allow courts to entertain such generalized political grievances would

result in "government by injunction"). The Reform Party, to the extent it has been injured, must assert any claims itself by counsel.

Due to plaintiffs' lack of standing, therefore, the Court finds that it lacks subject matter jurisdiction over any claim which does not allege a personal injury to one of the three pro se plaintiffs and **DISMISSES WITHOUT PREJUDICE** all claims not personal to the plaintiffs.

2. *Other grounds*

Despite their lack of standing with regard to the claims involving the Reform Party, each plaintiff asserts that he or she personally has been harassed and injured by the defendants' alleged pattern of hailing them into court in various jurisdictions around the country to answer frivolous lawsuits, and, further, that these lawsuits are predicate acts for the civil RICO and Hobbs Act causes of action in the Complaint. Because the plaintiffs allege violations of federal statutes, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[3]

---

[3]Although the plaintiffs also assert diversity subject matter jurisdiction, diversity does not exist in this case because there is at least one plaintiff, Doogs, who is a citizen of the same state as at least one defendant, Kennedy. Both are citizens of Texas. See, e.g., Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005).

Moreover, unlike the claims already discussed, each plaintiff meets the test for standing on the RICO and Hobbs Act claims because each alleges a personal injury, specifically the expense and harassment of having to litigate various frivolous lawsuits. Moreover, the plaintiffs' injuries are likely to be redressed by the relief they request. Each seeks an injunction barring future litigation and an award of monetary damages for the expenses incurred to defend against the harassment. Consequently, this Court finds that it has subject matter jurisdiction to consider these claims.

B. Personal Jurisdiction

On those claims for which it has subject matter jurisdiction, the Court next must determine whether personal jurisdiction exists in this case.

In a case involving a federal question, a court must determine whether the exercise of personal jurisdiction over the defendants is proper by analyzing whether such exercise comports with due process. Pursuant to 18 U.S.C. § 1965(d), in RICO cases the Fourth Circuit has held that the proper inquiry is whether a defendant has sufficient minimum contacts with the United States, not with any particular state. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 616, 626-27 (4th Cir. 1997).

In this case, it is undisputed that all of the defendants are citizens of the United States and reside within the United States. Consequently, pursuant to ESAB Group, this Court has personal jurisdiction over the defendants for the civil RICO claims. 126 F.2d at 626-27. Because the plaintiffs assert the Hobbs Act claims as underlying predicate acts to the RICO claims, this Court also has personal jurisdiction over the defendants for the Hobbs Act claims.

C. Venue

Having determined that there is personal jurisdiction, the Court next must address the issue of venue. Where Congress establishes a statutory test for determining proper venue, this Court is bound to follow that test. ESAB Group, 126 F.3d at 626. In RICO cases, pursuant to 18 U.S.C. § 1965(b), Congress has provided that any district is a proper venue for a RICO action if at least one of the defendants meets the venue tests of either 18 U.S.C. § 1965(a) or 28 U.S.C. § 1391(b).

Title 18 U.S.C. § 1965(a) allows a RICO claim to be brought in any district where a defendant "resides, is found, has an agent, or transacts his affairs." Title 28 U.S.C. § 1391(b) allows a federal question action to be brought in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Unfortunately for the plaintiffs, in this case no defendant meets the statutory test under 18 U.S.C. § 1965(a). It is undisputed that no defendant, corporate or individual, resides in West Virginia, no defendant was found in West Virginia, no defendant has an agent in West Virginia, and no defendant transacts his or her affairs in West Virginia.

The plaintiffs also cannot meet the test of 28 U.S.C. § 1391(b). They fail to meet the requirements of that test's first prong because the defendants do not all live in the same state. They also fail to meet the requirements of the test's third prong because, as already noted, no defendant is found in West Virginia.

Evaluating the second prong of § 1391(b) requires more analysis. Although addressing personal jurisdiction, not venue, the analysis in <u>ALS Scan, Inc. v. Digital Service Consultants, Inc.</u>, 293 F.3d 707, 712 (4th Cir. 2002) (Neimeyer, J.), is instructive. In determining whether a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in West Virginia, a court should consider the range of the

defendant's contacts with the forum state. When a defendant's contact with the forum state is limited solely to the Internet, as is alleged here, the appropriate inquiry is to determine on a sliding scale the amount of virtual contact involved. ALS Scan, 293 F.3d at 714. At one end of the spectrum are situations where a defendant clearly does business over the Internet in the forum state. Id. At the opposite end are those situations where a defendant has simply posted information on an Internet website accessible to users in foreign jurisdictions. Id.

In this case, the defendants appear to have almost no connection to West Virginia. Their only West Virginia contact is information posted at http://www.reformparty.org/westvirginia.htm indicating that Charles Foster is the contact person for the Reform Party of West Virginia. All predicate acts, such as the allegedly vexatious litigation, occurred in other states.

The analysis does not end there, however, for the result of the defendants' activities may have been felt in West Virginia. Plaintiff Heinemann lives in West Virginia, and the defendants did post a page on the Internet indicating that the Reform Party of West Virginia is currently reorganizing and that Foster was the party's contact person. The website lists an e-mail address for Foster but does not otherwise allow for user interaction. Users,

for example, cannot post comments to an online forum. Thus, the information provided is minimal, at best.

This one, bare-bones web page, among the many other web pages produced by the defendants, falls near the end of the <u>Zippo/ALS Scan</u> sliding scale occupied by persons who merely post information on the Internet. There is no allegation that anyone in West Virginia has ever attempted to access the web site. Consequently, the Court cannot find that a substantial portion of the events or omissions giving rise to the plaintiffs' claims occurred in West Virginia, and concludes that the plaintiffs have failed to satisfy any of the venue tests of § 1391(b).

When a court determines that venue is not proper, it may transfer the case to another court where proper venue exists, if such can be determined, or it may dismiss the case without prejudice to allow the plaintiff to re-file the case elsewhere. <u>Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.</u>, 471 F.3d 544, 550 (4th Cir. 2006). In this case, there are many potentially proper courts throughout the United States where venue would be proper under § 1965(b). By way of example, the Court notes that one or more of the defendants reside in Florida, Mississippi, Nebraska, New York, Rhode Island and Texas.

Consequently, because neither statutory venue test is met, this Court is an improper venue for the plaintiffs' litigation. The Court, therefore, **DISMISSES WITHOUT PREJUDICE** the remaining claims so that the plaintiffs may choose a proper venue in which to refile their case.

### III. Conclusion

For the reasons discussed in this opinion, the Court **GRANTS** the defendants' motion to dismiss (dkt. no. 4) and **DISMISSES** this case **WITHOUT PREJUDICE**. Accordingly, the Court also **DENIES** the plaintiffs' pending motion for a subpoena (dkt. no. 20) **AS MOOT**. The Clerk is directed to **STRIKE** this case from the docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this order to counsel of record and to pro se plaintiffs.

DATED: March 10, 2008.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE